THE MIGUEL DI LARRINAGA.

(District Court, S. D. New York. February 9, 1914.)

*(Syllabus by the Court.)*

1. CONTRACTS (§ 101*)—SHIPPING (§ 102*)—CONTRACTS OF CARRIAGE—VALID-
   ITY—WHAT LAW GOVERNS.
   A contract valid where made is valid everywhere, unless contrary to the public policy of the place of performance; and the law of the forum is immaterial, if a contract is valid where made and where it is to be performed. Hence a contract for transportation to Cuba, made in Liverpool and valid by the laws of Great Britain, is presumed to be valid in Cuba, and the fact that, owing to its containing a negligence exemption, it is not valid by the laws of the United States, does not render a vessel, sued here for breach of such a contract, liable for damages.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 455–460; Dec. Dig. § 101;* Shipping, Cent. Dig. § 400; Dec. Dig. § 102.*]

2. EVIDENCE (§ 81*)—LAWS OF FOREIGN COUNTRY—PRESUMPTION.
   There is not any presumption that the law of Cuba is the same as the law of the United States. Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40, followed.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 102; Dec. Dig. § 81.*]

3. SHIPPING (§§ 121, 140*)—NEGLIGENCE—EXEMPTION OF BILL OF LADING—
   WARRANTY OF FITNESS.
   An act of negligence on the part of a competent mate in failing to substitute a new rigging on the mast of a vessel in place of rigging which had become weakened and unsafe during the voyage is an act of negligence, within the negligence exemption of a bill of lading; and the owners, having equipped the vessel with a good cordage and a competent mate, have complied with the warranty of fitness which underlies every bill of lading and takes precedence of the exceptions therein.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 449–451, 466, 493–495; Dec. Dig. §§ 121, 140.*]

4. SHIPPING (§ 141*)—BILL OF LADING—NEGLIGENCE CLAUSE—DEFENSE.
   A clause in a bill of lading exempting the shipowner from any injury to the goods arising from "any act, neglect, or default of pilot, master, mariner," etc., is good by the English law; and if the destination of the shipment is not to the United States, nor to any other country by whose laws such clauses are proved to be contrary to public policy, it is a defense to an action in our courts for damage to cargo caused by negligence in handling.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493, 497–499; Dec. Dig. § 141.*]

In Admiralty. Action by the Guantanamo Sugar Company against the steamship Miguel di Larrinaga. Dismissed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. M. R. Lyeth, of New York City, for libelant.

John M. Woolsey and Convers & Kirlin, all of New York City, for claimant.

HOUGH, District Judge. 'Libelant was consignee and owner of certain heavy machinery, which had been transported on this British steamer from Liverpool to Guantanamo. While one heavy piece was being put ashore at the latter port, a stay broke. This permitted the mast to buckle, and the boom from which the machine hung to settle, so that the hanging piece of metal came down on another machine, to the injury of both. The machinery had been taken aboard at Liverpool in the same way, and with the same stay, mast, and boom. Examination showed the stay to be worn. No recent inspection of it is shown.

Apparently the strength of the stay became impaired during the voyage across the Atlantic. No preventer stays were rigged. There was plenty of wire cordage on board, and the crew could easily have rigged a new stay, or additional stays, if the officers had properly inspected that portion of the standing rigging which parted. The defect was not latent, and was, indeed, obvious.

The bill of lading contains an exception against injury to goods arising from "any act, neglect, or default of the pilot, master, mariners," etc. English law is in evidence, and this clause is valid thereunder.

Libelant's demand for recovery rests on two propositions:

[1, 2, 4] First. The damage was received within the territorial waters of Cuba. The law of Cuba is not shown, therefore it must be presumed to be that of the United States. Under the latter system of jurisprudence any attempted restriction of liability for negligence is unavailing. It was negligent not to inspect the standing rigging; consequently this ship is liable as though the accident had occurred in New York Harbor.

Admittedly this presumption runs counter to the much older and stronger one that a contract valid where made is valid everywhere. If there were no other line of reasoning presented, I should hold that the presumption just referred to overrode that relied on by libelant. But I am also of opinion that, in relation to almost every right of action, libelant's theory is unsound for the reasons sufficiently stated in Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40.

[3] Second. The fact of collapse shows that the unloading arrangements of the ship (so far as heavy machinery was concerned) were defective, and were so before the voyage was entered upon; wherefore there was a breach of that implied "warranty of fitness" which underlies every bill of lading, and takes precedence of the exceptions therein. Undoubtedly the facts shown prove negligence, and to draw the line between a breach of the contract of carriage, and a breach of something antedating and yet supporting that contract, is not always easy. Indeed, the same set of facts may show, and have shown, both breaches.

This case is not nearly so difficult as some reported; for the reasonable inference is that the defect causing damage developed after voyage begun, and was the result of occurrences on the voyage. The line of demarcation, however, is well indicated in a case largely relied

on by libelant (The Schwan, L. J. [P. A. & D. Div.] 112 [1909]); and is best presented in the opinion of Lord Gorell.

In that litigation the Schwan was shown to have lost sugar cargo by the inflow of sea water through a peculiar and new-fangled "cock," which was safe if handled by those understanding it; but the ship had gone to sea without any proper instruction being given the crew as to how to use the new invention. Therefore the Schwan was held unseaworthy—i. e., unfit to carry sugar cargo—solely for lack of an instructed crew. It follows that, had the crew been instructed, and a knowing, but negligent, engineer left the cock open, a different result would have followed.

Mutatis mutandis that rule applies here. The Larrinaga had a good mast, good cordage, and a competent mate. The mate did not put the good cordage on the good mast. The owners did all that ordinarily careful and prudent men would have done, and have therefore fulfilled that "absolute undertaking"—which is warranty. McFadden Blue Star Line, 74 L. J. (K. B.) 423.

These considerations render it unnecessary to dwell upon the defense of lack of notice.

Libel dismissed, with costs.